Thank you Judge Silverman and may it please the Court. There are two boons which the plaintiffs assert that they accomplished in this case. One was the rescission of the home endorsement from all policies throughout the United States. And the other was the stipulated use of the ALF op memo of 2010 outside the states of California, Florida and Minnesota where it already applied. So the magistrate in looking these over indicated first of all that he determined that $250,000 was a fee that was justified as work done on the rescission of the endorsement alone. I throw that out not as the main buttress of argument, but it is an instance of clear error by the district court. Because at that point in time, at the time that even the plaintiff was notified as to all work done to rescind the endorsement, it's undisputed that the totality of the fees by the plaintiffs was $54,900. That's at 3 excerpt of the record, 483 through 484. So that we believe would be clear error even if the claims made in the district court as to the magnitude of the fees and the justification for it were otherwise proper. But let's go ahead and address the two things that I think are most important. One is shared by both of the claims relating to the extrajudicial enforcement or the attempt to extrajudicially enforce California law. And the other relates to the rescission of the endorsement by itself. And that's where the catalyst rule of law under Graham against Daimler-Chrysler comes into play. Because again, the district court concluded in saying that the rule of Graham had been satisfied, stated that Ms. Furman did whatever an attorney might have done. She demanded that the endorsement not be used as a basis to die. I'll slow down. To deny policy benefits to the plaintiff. Fundamentally, she clearly demanded that the policy be interpreted and applied as written. Well, that is not what Graham denies. Her daughter's phone calls to the third party administrator certainly may have established what Ms. Gottlieb wanted. But Graham demands that the plaintiff must at least, not at most, but at least notify the defendant of its grievances and propose remedies and give the defendant the opportunity to meet its demand within a reasonable time. Is that obligation excused if it would be futile to require that? Well, it is, Your Honor, and I'll turn to what the Chang case had to say about the futility in a moment. But certainly, there cannot be an assertion here that if a single person makes a demand for policy benefits, that is the same as saying I am making a claim on behalf of 20,000 people who may be part of a class to assert that you must go ahead and rescind the endorsement as to all those persons. And secondly, by the way, as this plaintiff did, say, oh, also, as an aside, I want to be paid $6 million. I take your point that the daughter calling up the customer service doesn't cut it. But what about what happened in Nebraska with the insurance department there? The futility argument here in two respects does not hold up. And that has to do for two reasons. First of all, with respect to the rule set forth in Chang, they talk about an instance in which for four years after litigation is filed, the defendant continued, continued, continued to uphold its assertion that it was in the right and the plaintiff was in the wrong. Here, on the other hand, even the magistrate says the culminating event which caused the rescission was service of the complaint. Well, up until that point in time, the totality of the communications between SHIP, primarily in the fashion of emails with the Department of Nebraska, related to an effort back in 2007 when SHIP hadn't even been formed yet, but it was being told by Conseco, the predecessor company, that in Nebraska, Conseco was going to rescind the endorsement. And evidently it never did. So what was done up until late March, beginning of April, was informational from SHIP saying, look, this is the endorsement language, this is what it says it does. But there was such a brief period of time there. There was like a one-week period, a two-week period between the time that the first inquiry went out and the instance where the general counsel said, look, I don't know about this, even though I've been the general counsel here for two years, but we're going to go ahead and rescind this on a nationwide basis. So it isn't something that there's a demonstration here or could be a demonstration of futility with respect to the work that has been done and the determination to go ahead and— Your Honor, the reason for that, this does have to do with the overweening contention that we make in many respects. And that is that we cannot go ahead and have this stipulated injunction, which changes the conduct of SHIP only with respect to insurers outside the states of California, Florida, and Minnesota, be a basis to allow Section 1021.5 to provide attorneys' fees to this plaintiff. Because whatever good may have been accomplished by the stipulated injunction, the injunction provides relief, if you will. It provides a different policy interpretation and, indeed, a determination to provide benefits notwithstanding the literal words of policies initially in those three states before any litigation was filed, and then eventually in 47 other states because of the injunction. So the injunction does not provide a basis to provide attorneys' fees under California law because, as I indicated in the district court, what you have is an instance in which you are asking the policy of an Indiana-based carrier who has been chartered under Pennsylvania law to provide a change in its actions in Arkansas. And you're saying that California law is a basis to go ahead and provide attorneys' fees for that conduct. That is surely an extraterritorial attempt to use California law to go ahead and set policy for another state. And under the California cases, that does not hold muster. And if it did, I say that the due process clause would not welcome it either, would not allow that. It is effective analysis that the district court seemingly did not rely on this ground. Well, you know, the district court did discuss the extrajudicial application of the statute and basically went through, I think, the improper analysis. That is, the district court went ahead and said, basically what we have here is a minimum context type of analysis to see whether California law applies. And also we have a situation here where we go ahead and make a determination as to whether we can go ahead and apply California law because Ms. Gottlieb herself is a Californian. And so certainly with respect to Ms. Gottlieb's own claims, that means that California law can apply. She claims that a contract was breached in California. But what she cannot do is say that a benefit has been provided on behalf of any class, be it the rescission class or the stipulated injunction class, as a result of the fact that she is a Californian and trying to make use of this statute. I see you're down to five minutes. You're welcome to keep going or to reserve whichever you prefer. I'll just take one more minute. And I want to get back to your question, Judge Silverman, that relates to the question relating to futility. What Chang did was it looked to the conduct after the suit had been filed because that was the only way you could look back and see, well, would it really have been futile? What if, for example, Ms. Gottlieb's attorneys, instead of just filing and serving the complaint, had written a letter and had said, well, what we're going to do is ask for nationwide relief and we're also going to sue for $6 million individually on behalf of Ms. Gottlieb. I submit that in that instance, the public policy of California and requiring, as Graham does, the notice would not have been futile in any event. Every in-house officer in the whole company would have been immediately focused in like a laser beam. The whole reason why that little addendum to the catalyst theory was added by the California Supreme Court was so that you don't have an instance in which you can have a gotcha, not by a plaintiff, but by plaintiff's counsels who want to generate fees. And I would submit that if we allow something like this to go forward, that's the circumstance that we will have. So I will reserve the remainder of my time. Thank you. Thank you, Mr. Lee. May it please the court, my name is Corinne Chandler and I represent the plaintiff, Beatrice Gottlieb. As far as the extraterritoriality of this statute, 1021.5 does not regulate insurance conduct. It is a remedial statute intended to promote public interest litigation. Neither the courts nor the statute have ever imposed a residency requirement. In fact, if you look at the cases that have been cited by both parties, Sullivan v. Oracle, Norwest Mortgage v. Superior Court, Northwest Energetic v. California Franchise Board, you will see that the courts engaged in a class-by-class analysis of whether the members of the class could be subject to state regulatory schemes or regulatory statutes. In each of those cases, the courts held that members of the class who were out-of-state residents who suffered a harm while they were out-of-state and perhaps received a benefit could be members of the class. And here we have a California statute. We have litigation that was brought by a California resident for a policy she purchased in California. For a claim that was denied in California, premiums were paid in California. No other state has more of an interest in applying its laws than the state of California. Speaking of California law, do I understand correctly that California law requires that if you want attorney's fees under a catalyst theory, you have to attempt to settle the case before filing suit? What the Graham case says is that you must give notice of your grievance. You do not have to have an attorney letter. You do not have to attempt to settle. You must give notice of your grievance in your proposed remedy. And Judge Kenton did go through the scenario there, and I will note that Judge Kenton's findings on causation are entitled to deference. So if somebody calls customer service and says, I want to make a claim, and they say it's denied, that satisfies it? That's the end of it? Well, I think that there are broader facts to look at. First of all, as Judge Kenton noted, when a claim is denied, the only contact that a claimant is given is the SHIP call center. And Judge Kenton found it very, I won't say troubling, but very persuasive from the plaintiff's point of view that she contacted the only contact number that she was given. Well, I have no problem with it. I mean, this lady's in a nursing home and calls up the 800 number. I grant you that. It's the only contact. But then she hires a law firm, right? She hired a law firm. What excuses the law firm from sending a letter to the insurance company saying, we now represent Mrs. Gottlieb, and we have this claim, and we're going to sue you if you don't do X, Y, or Z? You know, the Graham case expressly held that an attorney letter is not necessary. What the plaintiff is supposed to do is notify the defendant of her grievance and her proposed remedy. And Judge Kenton went through this, that she did notify, and that she did a very good job of explaining why she felt that their claim denying home health care benefits was contrary to the terms of the policy. Well, as I understand, she talked to a representative, and when she got a negative answer, she then asked for a supervisor. That's correct. And then she got a negative answer from the supervisor. That's correct. Ken Davis testified that they relied upon the endorsement to advise policyholders of why benefits would not be paid when care was rendered in an assisted living facility. And the purpose of the pre-suit notification is to demonstrate why private enforcement is necessary. If the defendant is willing to change its ways in response to the pre-suit notification, then there is no need for private enforcement. Well, actually, if they had actually just paid her claim, there wouldn't be a lawsuit. That's correct, but they did not. And there was no indication in any of the logs that SHIP was willing to reconsider its position. In fact, it took a contrary position with the Nebraska Department of Insurance. So you're saying just denial of the claim, she makes a demand, they say no, that's sufficient to satisfy Graham, if I hear you right. I think that in the context of this situation where the call center is the only avenue which Ms. Gottlieb could contact, could pursue, then yes. I would say yes. So I guess the further question then is, okay, how far does that go? When the attorneys come in and they're actually preparing a lawsuit, do they need to give notice of that as well? Under Graham, I do not believe so. I do not believe that the attorneys, that it expressly says in an attorney letter, it's not necessary. And even if she did not satisfy the requirements of pre-suit notification, Judge Kenton found that it was excused on futility grounds. We have an entity with far more clout than Ms. Gottlieb, the Nebraska Department of Insurance, inquiring why this endorsement is on the policy. In early March, before Ms. Gottlieb's, excuse me, before Ms. Gottlieb's lawsuit was filed, SHIP notified the Nebraska Department of Insurance that the endorsement was issued to clarify the term home. It did not retreat from the endorsement at all. SHIP received notice of this lawsuit. There is testimony from SHIP's representative that it knew of this lawsuit before it was formally served. The SHIP customer service manager sent a copy of the endorsement to Pat Carmody, the general counsel, with the knowledge that the lawsuit had been served. After that, it was formally served. After that, SHIP claims that it made the decision to rescind. Excuse me, you said that Graham specifically says an attorney letter is not required? That's correct. Can you show me where I'm missing that? What page are you referring to? I'm on page 155, which is... Lengthy pre-litigation negotiations are not required. I don't see anything about an attorney letter. I very well may be overlooking it. I'm sorry, Your Honor, what page was that? I'm on 155 of P3rd, which discusses this. It looks to me like what they're saying is there has to be a reasonable attempt to settle the matter short of litigation. It doesn't mean calling up and just getting into denial of your claim. It says lengthy pre-litigation negotiations are not required, nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievance and proposed revenues and give the defendant an opportunity to meet its demands within a reasonable time. Well, how should we weigh the fact that SHIP rescinded the endorsement fairly soon after the lawsuit was filed? That is interesting, Your Honor. It claims that it did. However, it did not notify us until four months afterwards. If it could have stopped this lawsuit, it could have stopped this lawsuit. But it answered the complaint. In its answer, it denied that the endorsement modified the term home. It conducted discovery, did a joint report. We got all the way until August 2011 when our client received notice of the rescission. They did not notify counsel. They notified us. Two days later, we attended six or seven out-of-state depositions in Indiana. Now, at that time, we had just discovered the existence of the ALF Claim Op Memorandum. Before our client was notified of the rescission, we met and conferred with the defendant about amending the complaint to assert an additional claim based upon that claim protocol. We did that within the time constraints specified in the scheduling order. And by September 2011, we had an additional claim based upon the ALF Op Memo. All right. May I, since your time is fleeting, I'd like to ask the same question I asked opposing counsel. Are we constrained to make a decision on the catalyst theory? What about the injunction? Your Honor, the trial court's decision was also based upon the injunction. He stated at excerpts of record page 11, page 11 of the opinion, a substantial benefit was received in this case by virtue of an injunction which requires SHIP to extend its California protocol but abandon the independent residence requirement for home health care. And he did make the statement that we had satisfied the $250,000 fee requirement based upon the endorsement alone, but his decision went broader than that. Good. So if we disagreed with you on the catalyst theory, the client would be entitled to fees on the basis of obtaining the injunction. Is that your argument? We are entitled to fees based on both. Thank you. Would you mind reading me the quote again? You were reciting. I can't find it in my copy. I'm sorry. It was the same quote that Your Honor was relying on, but it just went a little further. You're on page 155? Yes, it's on page 155. Okay. Where are you reading? Lengthy pre-litigation. I suspect it's towards the end of the page. Yes. Yes, it is. It's right towards the end of the page. Lengthy pre-litigation negotiations are not required, nor is it necessary. Wait, stop. That's not what it says in my book. I don't have a nor. Are you reading a paraphrase or are you reading from the case? I'm reading it word for word, Your Honor. Lengthy pre-litigation negotiations are not required, nor is it necessary. I can show you mine. Okay, I'll show you mine. You show me yours, I'll show you mine. Has the opinion been superseded? Is there an amended opinion? I mean, you're reading something that's contrary to what I've got here. It's the same as what I've got. I'm looking at 101, p3, 155. I have 155 to 156. There's no nor in my book. Well, we'll get to the bottom of this. I don't think that it is a novel premise. No, it's just you have a different version of the case than the one I have. That would be a problem. If you go further and you look at the cases that the California Supreme Court cites, for example, they cite one case that says that the litigants must inform agency of objections before litigation to give agency opportunity to respond. So that case seems to support what counsel was arguing, that just informing them of the problem, giving them a chance to. Well, I want to make sure I understand what the court tells. If we have different versions of the opinion, that's a problem. That's strange. Are you reading in the Pacific reporter version or the Cal version? I am looking actually at the Cal version. Yeah, I have the Cal reporter version too. I have the Pacific reporter, so we'll figure it out. Okay, thanks. Finally, with my last minute of time, I would like to address the reasonableness of the fees. The fees that we actually expended here were over $370,000. We had $36,000 in costs. Pursuant to the settlement, we negotiated a cap of $250,000, so we are already taking a substantial reduction in fees. SHIP has tried to apportion particular time during the litigation where we could have walked away, where we could have put an end to this, but Ms. Gottlieb had a fiduciary duty to the class. This is no more apparent than in the Rule 68 offer of judgment, which defendant offered to plaintiff in March 2012. They offered her $50,000 to walk away, and the class would take nothing. Ms. Gottlieb could not do that. She had a fiduciary obligation to the class. She made an ex parte application to the court. The court issued an OSC to defendant, and it withdrew its offer. I ask that the court, I see that I'm out of time, but I ask that the court affirm the judgment of Judge Kenton. Thank you. Thank you, Ms. Chandler. Mr. Lake, which version do you have? Your Honor, I hope that the quote from page 43 of the opening brief is the most accurate of all, but it quotes from the Cal Reporter, I'm sorry, from the Cal Reports, the official reports, and it states, I'll not read the full paragraph, but it begins by saying, the Attorney General proposes that a plaintiff seeking attorney fees under a catalyst theory must first reasonably attempt to settle the matter short of litigation. We believe this requirement is fully consistent with the basic objective behind Section 1021.5, and one of its explicit requirements, the necessity of private enforcement of the public interest. It goes on, and I think the quote that everybody was trying to, the sentence everybody was trying to quote correctly reads, lengthy pre-litigation negotiations are not required, nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demand within a reasonable time. And that's certainly something that was not done here. When you simply have service of the complaint, then the defendant is in a position where it has to go ahead and respond, as Ms. Chandler notes, the defendant has to respond to that plaintiff who is seeking $6 million for herself while concurrently saying that she is operating as a fiduciary for the class. That is what made it so difficult to resolve this case, is that we had an instance in which this was not a plaintiff seeking remedies solely on behalf of the endorsement rescission class or for the injunction. At oral argument before the magistrate, counsel for the plaintiff said, look, we couldn't get rid of the case at an early stage because we were exploring the damage claims of Ms. Gottlieb herself. So it was like once you put your foot inside the courthouse door, that goes ahead and precludes you from taking advantage of what the Attorney General and what the Supreme Court was necessary, that is reasonably attempting to settle the matter short of litigation. That was not done here. You can say, well, the phone calls that the daughter had with the third-party administrator were all fine and well in setting forth Ms. Gottlieb's position with respect to this rogue endorsement. And as we say, it was a rogue endorsement. It didn't belong as part of her policy, and Ms. Gottlieb knew it. But even if you go ahead and consider that, you're not embarking upon the requirements set forth in Graham. So with respect to the rescissionary class, we assert that the requirements of Graham have not been met. We assert that you can't make any kind of an evaluation that this is a case similar to Kate's because if that kind of a letter had gone out, you wouldn't have been able to say that, well, this is simply a matter in which it would have been impracticable or even futile for them to go ahead and make that kind of a demand. And then, again, I know it's a rather perhaps a novel concept even, but to look at whether this California attorney's fee provision is something that is designed for the purposes of either of these classes when the people being given relief by it, other than counsel, of course, but the people getting relief by this section are non-Californians, and it's against the non-Californians, and the relief is outside of California. So for those reasons, we think that the judgment of the magistrate should be overturned. Thank you, Your Honor. Thank you, Mr. Lee. Thank you, Ms. Chandler. The case just argued is submitted. Just so you know what I'm talking about, why don't you jot down 101 Pacific, reporter third at 140, and you'll see we printed this out through Westlaw, and it's got a different text than the one you both cited. So anyway, thank you. The case is submitted.
judges: Nelson, Silverman, Wardlaw